**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

    v.            No. 06-CR-394
                     (GLS)
JOHN VanHOESEN,
      Defendant.

---

**APPEARANCES:**        **OF COUNSEL:**

HON. GLENN T. SUDDABY    RICHARD S. HARTUNIAN, ESQ.
United States Attorney for the    Assistant United States Attorney
 Northern District of New York
Attorney for United States
Room 231
James T. Foley U.S. Courthouse
Albany, New York 12207-2924

MITCHELL S. KESSLER, ESQ.
Attorney for Defendant
63 Pike Creek Drive
Cohoes, New York 12047

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION[1]

  Presently pending is the motion of counsel for defendant John VanHoesen ("VanHoesen") for an order finding VanHoesen mentally incompetent to stand trial or to assist in his own defense in accordance with 18 U.S.C. § 4241(d). Docket entry dated 01/09/2008; Docket No. 292. For the reasons which follow, it is recommended that the motion be denied.

---

  [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(3) and N.D.N.Y.L.R. (Criminal) 58.1(a)(2)(L).

**I. Background and Procedural History**

On July 26, 2007, VanHoesen was named as a defendant with twenty co-defendants in Counts 2-5 of a six-count superseding indictment. Docket No. 191.[2] That indictment alleges that the defendants were members and associates of a gang in Albany known as the "Jungle Junkies" which engaged in drug trafficking, attempted murder, robbery, and witness tampering. Id. at 2. The counts in which VanHoesen is named as a defendant allege possession with intent to distribute marijuana and crack cocaine and conspiracy to do so . Id. at 15-18. VanHoesen was arrested on these charges on or about August 17, 2007 and, on motion of the United States, was ordered detained pending trial. Docket entry dated 8/17/07; Docket No. 205. At the initial appearance, counsel for the United States advised VanHoesen that because of his criminal record, VanHoesen faces life imprisonment without parole if found guilty of the charges. VanHoesen entered a plea of not guilty to the charges and is awaiting trial.

At his initial appearance on August 17, 2007, VanHoesen requested the appointment of counsel, the Court determined that he qualified, and Joseph McCoy, Esq. was appointed to represent VanHoesen. Docket entries dated 8/17/07, 8/20/07. In a letter nine days later, VanHoesen requested the removal of McCoy as his attorney and the appointment of new counsel. Docket No. 213. A hearing concerning VanHoesen's request was held on September 4, 2007 at which the Court heard VanHoesen and McCoy. They agreed that because of their differences over the case and conflicts with each other, McCoy should be

---

[2]VanHoesen was identically charged in a second superseding indictment returned August 23, 2007. Docket No. 209.

2

replaced. Docket entry dated 9/06/07.[3] VanHoesen's motion was granted, McCoy was relieved as VanHoesen's counsel, and Mitchell S. Kessler, Esq. ("Kessler") was appointed to replace McCoy. Docket No. 216.

Two weeks later, VanHoesen sent a letter to the Court requesting that Kessler be replaced with new appointed counsel. Docket No. 230. A hearing was held with VanHoesen and Kessler on October 1, 2007. Docket entry dated 10/1/07. Finding no violation of VanHoesen's constitutional rights, VanHoesen's motion was denied. Docket No. 231. VanHoesen renewed his motion seven days later in a letter to the district court, but that motion was rejected. Docket Nos. 235, 266. Nevertheless, a further hearing was held with VanHoesen and Kessler before the undersigned on October 11, 2007 following which VanHoesen's motion was again denied. Docket Nos. 237, 239. A further hearing was held with VanHoesen and Kessler on November 2, 2007 following which removal of Kessler as VanHoesen's appointed counsel was again denied. Docket entry dated 11/2/07; Docket No. 252. In letters dated December 26 and 31, 2007, VanHoesen renewed his motion to replace Kessler with new appointed counsel, but his requests were summarily denied. Docket No. 289.

On January 9, 2008, Kessler made an oral motion for a determination of VanHoesen's competency to stand trial and to assist in his own defense. Docket entry 1/9/08. VanHoesen was committed to the custody of the Federal Bureau of Prisons (BOP) for evaluation. Docket No. 292. In a report dated February 28, 2008, Dr. William J. Ryan, a

---

[3]The proceeding was held on-the-record, ex parte, in camera, and the record of the proceeding was ordered sealed. All such subsequent hearings regarding VanHoesen's representation were conducted in the same manner.

BOP Forensic Psychologist, diagnosed VanHoesen with Psychotic Disorder Not Otherwise Specified (NOS), Cannabis Abuse, Cocaine Abuse, and Antisocial Personality Disorder. Ryan Report (Hearing Ex. A) at 6-8. Dr. Ryan concluded that VanHoesen was presently incompetent to stand trial or to assist in his own defense. Id. at 8-9.

At conferences on March 12 and 20, 2008, the United States requested leave to obtain a second evaluation. Docket entries dated 3/12/08, 3/20/08.[4] The request was granted. Docket No. 362. In a report dated April 28, 2008, Dr. Thomas A. Qualtere, a psychiatrist in private practice retained by the United States, diagnosed VanHoesen with Antisocial Personality Disorder with significant Narcissistic Traits.[5] Qualtere Report (Hearing Ex. B) at 4. Dr. Qualtere concluded that VanHoesen was competent to stand trial and to assist in his own defense. Id. at 4-5.

An evidentiary hearing was held on June 5, 2008 at which VanHoesen and Drs. Ryan and Qualtere testified. Decision was reserved.

**II. Discussion**

The question presented here is whether VanHoesen "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense . . . ." 18 U.S.C. § 4241(d). A defendant's incompetence must be

---

[4] In a letter dated March 10, 2008, VanHoesen made another motion to replace Kessler as his counsel. Docket No. 354.

[5] By itself, a Personality Disorder generally does not constitute a mental disease for purposes of competence evaluations. Tr. 82; see also United States v. Prescott, 920 F.2d 139, 141-42 (2d Cir. 1990); John M. v. Stome, 72 F. Supp. 2d 316, 320 (S.D.N.Y. 1999).

4

established by a preponderance of the evidence. Id.; United States v. Morrison, 453 F.3d 34, 46 (2d Cir. 1998).[6] The issue of competence focuses on whether a defendant possesses "(1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" Nichols, 56 F.3d at 410 (quoting Dusky v. United States, 362 U.S. 402 (1960)).

In determining competence, a court may consider a number of factors, including medical opinions, a court's observations of a defendant in court, and observations of a defendant by others in unguarded moments. United States v. Hemsi, 901 F.2d 293, 295-96 (2d Cir. 1990); United States v. Villegas, 899 F.2d 1324, 1341-43 (2d Cir. 1989). A court's determination of competence will be reversed only if clearly erroneous. Nichols, 56 F.3d at 411. "Where there are two permissible views of the evidence as to competency, the court's choice between them cannot be deemed clearly erroneous." Villegas, 899 F.2d at 1341; see also United States v. Schlueter, __ F.3d __, 2008 WL 1945377, at *2 (2d Cir. May 2, 2008) (quoting United States v. Gigante, 166 F.3d 75, 83-84 (2d Cir. 1999) (describing standard of review as "highly deferential")).

Here, Drs. Ryan and Qualtere offered conflicting opinions as to whether VanHoesen suffers from a mental disease and is competent to stand trial and assist in his defense. Dr.

---

[6]Section 4241(d) does not allocate the burden of proof to either the United States or the defendant, and neither the Supreme Court nor the Second Circuit has yet decided which party bears the burden. United States v. Nichols, 56 F.3d 403, 410 (2d Cir. 1995). A resolution of this issue is required "only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." Medina v. California, 505 U.S. 437, 449 (1992) (discussing state law); Nichols, 56 F.3d at 410. The evidence here is not in equipoise and, therefore, this issue need not be resolved.

Ryan asserts that VanHoesen suffers from, inter alia, Psychotic Disorder (NOS) characterized by delusions and paranoia, a recognized mental disease. See Ex. A at 6. Dr. Qualtere asserts that VanHoesen suffers from Antisocial Personality Disorder with significant Narcissistic Traits which does not cause VanHoesen to be incompetent to stand trial or assist in his defense. See Ex. B at 4. The resolution of the competing views requires consideration of a variety of factors presented in the record on this motion.

### A. Experts' Examinations

The qualifications of the two experts are generally similar. Dr. Ryan is a psychologist and Dr. Qualtere a psychiatrist, but both have substantial experience in conducting evaluations of criminal defendants for competence to stand trial. Compare Tr. 66-69 (Dr. Ryan) with Tr. 130-34 (Dr. Qualtere).[7] Dr. Ryan's examination of VanHoesen took place over multiple sessions and several weeks while Dr. Qualtere's occurred in a single, 2.5 hour session. Dr. Ryan's examination was thus more complete at first blush and would be entitled to greater weight but for Dr. Ryan's failure to consider VanHoesen's relationships with attorneys on prior occasions.

The basis for Kessler's motion and a principal basis for Dr. Ryan's conclusions was VanHoesen's relationship with his attorneys in the present case. However, VanHoesen, now thirty-one years old, has had numerous involvements with the criminal justice system for over fifteen years. See, e.g., Tr. 18-65. VanHoesen was first arrested in 1994. Tr. 20. He was arrested thereafter on multiple occasions, was frequently represented by Gaspar

---

[7]"Tr." followed by a number refers to the pages of the transcript of the hearing on June 5, 2008.

6

Castillo, an Albany attorney, as his retained counsel, was represented on other occasions by a public defender or appointed counsel, and was convicted of at lest two felonies during this period. According to the United States, these convictions serve to mandate a sentence in this case of life imprisonment without parole if VanHoesen is found guilty. T. 20-65; see also Pretrial Services Report.[8] It appears that when represented by Castillo, the cases proceeded to conclusion without incident and that VanHoesen experienced no difficulty assisting in his defense of those charges. See, e.g., Tr. 21-26, 29-30, 32-37, 43-45, 50-53.

In other cases, however, VanHoesen was assigned counsel and the course of his legal representation in those cases followed the same tortuous path that has been followed here. In one case, VanHoesen was assigned counsel to represent him on the appeal of a felony assault conviction. When the first 2-3 attorneys failed to produce briefs that VanHoesen found acceptable, he obtained new assigned counsel either through the request of counsel to be relieved or after filing complaints against the attorney. See Tr. 38-42. This ended with the assignment of Kessler, who obtained a reversal of VanHoesen's conviction and about whose representation VanHoesen voiced no complaints. Tr. 42-43. The same pattern occurred in a later case where VanHoesen was assigned counsel, complained about the attorney assigned, received new assigned counsel, and ultimately obtained a dismissal of the charges. Tr. 47-49.

VanHoesen's history of competent participation in defending criminal charges was highly material to any evaluation of VanHoesen's present competence to assist in his defense. Dr. Ryan omitted any inquiry concerning that history during his evaluation and did

---

[8]The Clerk shall file the Pretrial Services Report under seal.

not discuss it in his report. Rather, it appears that Dr. Ryan first learned of that history while observing VanHoesen's testimony at the hearing immediately prior to his own testimony. See Tr. 80-82, 89, 101-05. He agreed that VanHoesen's history of being able to assist competently in his own defense on numerous prior occasions was relevant to a determination of present competence. Dr. Ryan asserted, however, that this history of competence meant that VanHoesen's "disorder only manifested recently." Tr. 104; see also Tr. 89. Dr. Qualtere considered that history in his evaluation. See Ex. B at 2, Tr. 140-41. Thus, while Dr. Ryan's examination had the benefit of extending over a greater period of time, his failure to consider VanHoesen's lengthy history of competent assistance to counsel other than in passing at the hearing obviates any greater weight which would otherwise be accorded his opinion based on the nature and duration of his evaluation.

### B. Court's Observations of VanHoesen

The Court has had numerous extended interactions with and opportunities to observe VanHoesen. In response to VanHoesen's requests for the appointment of new counsel, the Court has conducted four hearings at which VanHoesen personally presented the reasons for his requests and responded to the Court's questions. Each hearing lasted approximately thirty minutes. Docket entries dated 9/4/07, 10/1/07, 10/11/07, 11/2/07. VanHoesen also testified for over one hour at the evidentiary hearing on this motion. Tr. 3-65. From these proceedings, the Court has observed VanHoesen to be intelligent, well-spoken, and exceptionally knowledgeable about the criminal justice system and procedures. The Court has also observed that VanHoesen can be demanding, single-minded, obstinate, and confrontational, particularly with his attorneys. It has also appeared that VanHoesen

believes himself able to manipulate personnel and procedures in the criminal justice system to achieve desired results and has succeeded in that objective on prior occasions. See, e.g., Tr. 38-43 (VanHoesen testified that after obtaining new appointed appellate counsel 2-3 times in the same case, Kessler was appointed to represent him and obtained a reversal of his conviction), 46-49 (VanHoesen testified that in another case, after succeeding in having his appointee counsel replaced 2-3 times, the last lawyer obtained a dismissal of the charge).

However, there has been no evidence of delusional thinking and nothing in the Court's observations has indicated a reason to believe that VanHoesen's conduct has been afflicted by any mental disease or defect. Rather, his conduct appears to arise from his obstinacy, single-minded focus, or his manipulations. It appears that VanHoesen well understands his legal jeopardy in this case and is strongly motivated to avoid the sentence of life imprisonment sought by the United States. It also appears that he can be demanding, difficult, and confrontational with attorneys but that he responds to questions factually, rationally, and without an evident impairment to his ability to comprehend, reason, or communicate. In short, the Court's observations of VanHoesen are more consistent with those of Dr. Qualtere than of Dr. Ryan.

### C. Other Mental Health Screenings and Evaluations

Each time VanHoesen was incarcerated, he was evaluated for mental disease upon entering a facility following arrest and after sentencing. It does not appear that any of these examinations were as thorough as those of Dr. Ryan or Dr. Qualtere. Nevertheless, none of those examinations suggested any mental disease or defect that impaired VanHoesen's

ability to stand trial or assist in his defense. See Tr. 61-63. Moreover, despite the number of prior criminal charges VanHoesen has faced, there is no evidence that any prior attorney or court has ever contended or found that VanHoesen was suffering from a mental disease or defect or was otherwise incompetent to assist in his defense or to stand trial.

Moreover, during the period of his evaluation by Dr. Ryan, Van Hoesen was also evaluated by a psychiatrist at the BOP facility. Ex. A at 4. Dr. Ryan's report states that the psychiatrist "gave a diagnosis of Adjustment Disorder Not Otherwise Specified (NOS), and no medications were prescribed." Id. An Adjustment Disorder does not qualify as a mental disease or defect. Tr. 108.[9] Thus, among those who have evaluated VanHoesen's mental health, only Dr. Ryan has concluded that VanHoesen suffers from a mental disease and that he is incompetent to assist in his defense or to stand trial.

### D. Comparison of Experts' Opinions

Dr. Ryan's diagnosis that VanHoesen suffers from Psychotic Disorder (NOS) and is delusional presents at least three problems. First, the diagnosis of Psychotic Disorder (NOS) is of questionable validity here. Dr. Ryan defined a psychotic disorder as "a view of reality that . . . is inaccurate" which can rise to the level of incompetence depending on its nature and extent. Tr. 79-80. This diagnosis is characterized by, as relevant here,

---

[9] Dr. Ryan described this disorder as "a response involving . . . anxiety, depression, or both, or conduct problems that result from a particular situation that the person is said to be adjusting to. Sometimes it's incarceration or arrest." Tr. 108. Dr. Ryan further described such a disorder as one of transient emotions as compared to a psychotic disorder, which is a permanent thought dysfunction. Id. at 109.

10

delusions.[10]  Ex. A at 6.  Dr. Ryan found this diagnosis supported by VanHoesen's

> pervasive pattern of paranoid and disordered thinking.  Mr. VanHoesen[] told
> the present evaluator and his lawyer about a conspiracy against him and he is
> being unjustly persecuted.  These delusions are consistent with disordered
> and paranoid thinking.  Mr. VanHoesen also presented as tangential and
> displayed evidence of disordered thinking on [a test].

Id.

Dr. Qualtere testified that a diagnosis of Psychotic Disorder (NOS) is generally made when a patient appears to be in a transitory state, such as hallucinations induced by drug or alcohol abuse, or temporarily until the root of a disorder can be more firmly diagnosed.  Tr. 146-48.  According to Dr. Qualtere, where, as here, delusional thinking serves as the principal basis for the diagnosis, the more appropriate diagnosis would be Delusional Disorder - Paranoid Type or Persecutory Type.  Id. at 147.  It appears, however, that VanHoesen's symptoms did not satisfy the standards for either diagnosis.  This criticism of Dr. Ryan's diagnosis appears well founded where VanHoesen's symptoms do not meet the criteria for more specifically defined mental diseases and only a vague disease usually reserved for more transitory conditions is found.

Second, the opinion that VanHoesen is delusional, the principal basis for Dr. Ryan's diagnosis, is not supported by the record.  As examples of VanHoesen's delusional thinking, Dr. Ryan cited VanHoesen's beliefs that there was a conspiracy against him and that he is being persecuted.  Ex. A. at 6; Tr. 79.  The conspiracy appears to include the government prosecutor and VanHoesen's lawyers because they are being paid by the government.  A further suggested example is VanHoesen's belief that the government will eventually

---

[10] Delusions are "false, fixed beliefs of two types: grandiose and persecutory . . . ." United States v. Lindauer, 448 F. Supp. 2d 558, 562 (S.D.N.Y. 2006); see also Tr. 148.

11

consider allowing him to plead guilty to a misdemeanor charge and thereby avoid a mandatory minimum sentence of life imprisonment without parole despite the government's consistent statement that no such plea bargain will ever be offered.

As noted, a delusion is a false, fixed belief, such as seeing a pink elephant on the street. See note 10 supra; see also Tr. 149. Beliefs based on experience, although misguided or ultimately self-destructive, are not delusional because they rest on a rational basis. See Tr. 149-50. Here, VanHoesen's belief that the government is conspiring against him rests on such a rational basis because the government is in fact seeking to convict him and incarcerate him for life. As to his lawyers, his appointed counsel is in fact being paid by the government. See 18 U.S.C. § 3006A (establishing procedure and rates of compensation by the government for appointed counsel in criminal cases). Thus, while VanHoesen's inference from this fact that his counsel is conspiring with the government against him is wrong and misguided, it rests on a fact, not a delusion. Moreover, it is a misguided assertion made by numerous criminal defendants represented by appointed counsel. See Tr. 173-74.[11] Finally, VanHoesen's belief that he may eventually resolve this

---

[11] VanHoesen's counsel cites an incident with VanHoesen as another example of VanHoesen's delusional thinking. VanHoesen has contended to his present counsel, the examining experts, and the Court that at his detention hearing, the prosecutor asserted that VanHoesen committed an act in furtherance of the criminal enterprise alleged in the indictment on a date when VanHoesen was incarcerated on unrelated charges. Thus, VanHoesen contends that he must be innocent of the charges. There is, however, no evidence that the statement was made other than VanHoesen's incorrect recollection and assertion. VanHoesen's counsel obtained a copy of the audio recording of the hearing and reported to VanHoesen that it did not support VanHoesen's recollection. VanHoesen did not accept his counsel's statement. Then, lacking a laptop computer to play the recording for VanHoesen, his counsel prepared a transcript of the hearing and presented that to VanHoesen, but VanHoesen refused to accept its authenticity. Finally, VanHoesen's counsel obtained a laptop and played the recording for VanHoesen at the facility where he was incarcerated. The recording was audible but the voices were slower than normal for reasons that are not clear. VanHoesen refused to accept the recording as

case with a misdemeanor plea notwithstanding what he has been told by his attorneys and the prosecutor is consistent with VanHoesen's experience in several state court prosecutions where serious charges were ultimately reduced or dismissed. See Tr. 18-65, 159. While this belief is apparently wrong, it rests on VanHoesen's own factual experience and is not delusional. Accordingly, the bases upon which Dr. Ryan founded his conclusion that VanHoesen was delusional do not support that conclusion.

Third, Dr. Ryan's theory that VanHoesen's mental illness developed only recently and, therefore, could not have been diagnosed previously lacks support in VanHoesen's history. See Tr. 80-82, 104-05, 124-26. Dr. Ryan did not inquire about VanHoesen's lengthy history with lawyers. See Ex. A. He learned of that history at the hearing shortly before testifying. Dr. Ryan then assumed from VanHoesen's description of that history that the prior relationships with lawyers had been successful and, therefore, the Psychotic Disorder (NOS) premised in major part on events in this case must have appeared only recently.

However, this facile explanation fails to account either for VanHoesen's consistently successful relationship with Castillo in numerous prior cases over a period of years or his contentious conduct with appointed counsel in prior cases which parallels his conduct with appointed counsel in this case. Principally, this includes his efforts to obtain new appointed counsel when an attorney did not immediately proceed as VanHoesen directed or did not agree completely with VanHoesen's legal analyses. Where the foundation of Dr. Ryan's

---

authentic, continued to assert the accuracy of his own recollection, and engaged in a confrontational disagreement with his counsel over the issue. In the end, though, VanHoesen's assertion, while wrong and contrary to all other evidence, is rationally based either on his own recollection of what he heard or his desire to manipulate the course of his case. In no event, however, is it delusional.

13

opinion was VanHoesen's "delusional" conduct with his counsel in this case, the failure to afford more than impromptu consideration to VanHoesen's conduct with numerous attorneys in prior cases significantly undermines the validity of Dr. Ryan's conclusions.

By contrast, Dr. Qualtere rendered the diagnosis that VanHoesen suffered from Antisocial Personality Disorder with significant Narcissistic Traits and was competent. Ex. B at 4-5. Those conclusions were premised in part on VanHoesen's lengthy history of dealing with attorneys. Ex. B at 2. Dr. Qualtere's opinion and the bases therefor also appear more consistent with VanHoesen's history and with what was observed during the Court's direct interactions with VanHoesen. Thus, Dr. Qualtere's opinion is entitled to significantly greater weight than is that of Dr. Ryan.

### E. Evaluations of Factors

Considering the entire record on this issue, the Court finds Dr. Qualtere's opinion more compelling and entitled to greater weight. The opinion of Dr. Ryan is supported by neither psychiatrist who examined VanHoesen nor by any of those medical providers who screened or examined VanHoesen. The absence of any opinion that VanHoesen suffered any mental disease during any of these incarcerations supports Dr. Qualtere's opinion. That opinion is also supported by the Court's own observations and interactions with VanHoesen. Accordingly, a consideration of all relevant factors presented here compels the conclusion that VanHoesen is presently competent to stand trial and to assist in his own defense.

### III. Conclusion

For the reasons stated above, it is the finding of this Court that VanHoesen is not

14

presently suffering from a mental disease and is presently able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. Accordingly, it is hereby

**RECOMMENDED** that the motion of VanHoesen's counsel that VanHoesen be found incompetent to stand trial or to assist in his own defense (Docket No. 292) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: June 25, 2008
         Albany, New York

*David R. Homer*
United States Magistrate Judge